IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES BURT, an individual,                    Case No. 6:14-cv-01098-AA
                                                    OPINION AND ORDER
        Plaintiff,

    v.

CHRISTINE DENOYO, an
individual,

        Defendant.
_____

David C. Silver
Silver Law Group
11780 W. Sample Road
Coral Springs, Florida 33065

Franklin J. Seibert
F.J. Seibert, LLC - A Law Office
960 Liberty Street S.E., Suite 150
Salem, Oregon 97302
        Attorneys for plaintiff

Jeffrey A. Trautman
Fetherston Edmonds, LLP
960 Liberty Street S.E., Suite 110
Salem, Oregon 97302
        Attorney for defendant

Page 1 - ORDER AND OPINION

AIKEN, Chief Judge:

Plaintiff James Burt moves for a preliminary injunction freezing defendant Christine Denoyo's assets during the pendency of this action, as well as an order authorizing expedited discovery and a full accounting, pursuant to Fed. R .Civ. P. 65 and Or. Rev. Stat. § 95.260. For the reasons set forth below, plaintiff's motion is denied.

## BACKGROUND

At all relevant times, Rafael Denoyo and David Sullivan owned and operated Key Trading, LLC ("Key"). In January 2005, Peter Larkin joined Denoyo and Sullivan as a Key associate. In March 2005, Larkin introduced plaintiff to Denoyo and Sullivan. Between September 2005 and January 2006, plaintiff invested $2,000,000 with Key based on Denoyo's, Larkin's, and/or Sullivan's representations that Key "had developed a proprietary leveraged trading system" that would yield plaintiff "monthly returns [on his] investment." Compl. ¶ 15. Plaintiff never received any proceeds from Key. "In essence, [Key] stole the $2,000,000 from [plaintiff] with no intent of returning any funds to him." Id. at ¶ 18.

In September 2010, Key, Sullivan, Larkin, and Denoyo entered into a settlement agreement with plaintiff, in which they agreed to repay plaintiff $1,932,214. Key, Sullivan, Larkin, and Denoyo subsequently breached that agreement in myriad respects. As a result, in October 2012, plaintiff initiated a lawsuit in the United States District Court for the District of New Jersey ("District of New Jersey"), alleging claims for fraud and breach of

Page 2 - ORDER AND OPINION

contract. In October 2013, plaintiff, Key, Sullivan, Larkin, and Denoyo negotiated a provisional settlement that was ultimately approved by the District Court of New Jersey. In June 2014, the New Jersey Court entered judgment, in the principal amount of $1,800,000, against Key, Sullivan, Larkin, and Denoyo after they defaulted on the October 2013 settlement agreement.

On July 10, 2014, plaintiff filed a complaint in this Court against defendant, asserting violations of Or. Rev. Stat. § 95.230, Or. Rev. Stat. § 95.240, and Or. Rev. Stat. § 59.115. Specifically, the complaint alleges that: (1) Denoyo and/or Key transferred $57,705 to defendant between October 2007 and January 2012; (2) Denoyo and/or Key provided $234,811 to Centurian Securities, LLC ("Centurian"), a company controlled by Denoyo, in 2007; these amounts "were later directly disbursed" to defendant; (3) Denoyo and defendant used the funds stolen from plaintiff "to live a lavish lifestyle in an affluent neighborhood and acquire at least six vehicles"; and (4) defendant "aided and abetted" Key, Denoyo, Sullivan, and Larkin "in their scheme to defraud Plaintiff." Compl. ¶¶ 36-40, 57, 63. As relief, plaintiff requests that a constructive trust be imposed on defendant's assets and that all funds in her name be disgorged. That same day, plaintiff filed the present motion.

## STANDARD

A preliminary injunction, as a matter of equitable discretion, is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. Winter v.

<u>Natural Res. Defense Council Inc.</u>, 555 U.S. 7, 24 (2008); <u>see also</u>
Fed. R. Civ. P. 65; Or. Rev. Stat. § 95.260. The party seeking
injunctive relief bears the burden of demonstrating that: "(1) it
is likely to succeed on the merits, (2) it is likely to suffer
irreparable harm in the absence of preliminary relief, (3) the
balance of equities tips in its favor, and (4) an injunction is in
the public interest." <u>Barnett v. BAC Home Loan Servicing, L.P.</u>, 772
F.Supp.2d 1328, 1333 (D.Or. 2011) (citing <u>Winter</u>, 555 U.S. at 19).
"'The elements of [this] test are balanced, so that a stronger
showing of one element may offset a weaker showing of another.'"
<u>Id.</u> (quoting <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d
1127, 1131 (9th Cir. 2011)); <u>see also</u> <u>Save Our Sonoran, Inc. v.</u>
<u>Flowers</u>, 408 F.3d 1113, 1120 (9th Cir. 2005) (discussing the
"sliding scale" used to determine the propriety of injunctive
relief).

### DISCUSSION

This dispute arises out of plaintiff's previously litigated
claims against Key, Denoyo, Sullivan, and Larkin, which resulted in
a final judgment in the District Court of New Jersey. According to
plaintiff, defendant was "instrumental as an aider and abettor to
[the] securities fraud" perpetrated against him; she "lives a
lavish lifestyle" as a result of "the hundreds of thousands of
[his] assets" that were transferred to her by Denoyo and/or Key.
Pl.'s Mem. in Supp. of Mot. Prelim. Inj. 2-3, 15.[1] Plaintiff

---

[1] Plaintiff did not numeralize his opening memorandum, such
that the Court refers to the page numbers assigned in the docket.

Page 4 - ORDER AND OPINION

therefore requests that the Court "freez[e] [defendant's assets] pending the resolution of this matter," as a well as issue an order requiring defendant to expedite discovery, provide "a full accounting," "repatriate all assets [and] preserve evidence," and "Show Cause Why a Permanent Injunction should not be entered." Id. at 2.

Defendant opposes plaintiff's motion of the basis that he omits several salient facts, which, when taken into account, render the complaint "devoid of any meaningful claims whatsoever." Def.'s Resp. to Mot. Prelim. Inj. 7. Significantly, in 1998, defendant legally separated from Denoyo and, in 2000, they divorced; defendant subsequently married Jerry Jordan. Pursuant to their divorce decree, Denoyo was required to pay defendant approximately $2000 per month in child support and $1000 per month in alimony. See Jordan Decl. Ex. 1. Accordingly, the $57,705 in assets transferred from Key and/or Denoyo to defendant were "partial payments for child and spousal support," an arrangement which "began over five years before [Denoyo and Key] entered into any financial transactions with Plaintiff, and almost ten years before either the settlement agreements referenced in the complaint took effect."[2] Def.'s Resp. to Mot. Prelim. Inj. 6. Furthermore,

---

[2] Defendant elaborates upon her arrangement with Denoyo: "[f]ollowing our divorce I kept a Wells Fargo account open, which was solely in my name (then Christine Denoyo), for the purpose of dealing with [Denoyo]'s post-divorce obligations. [Denoyo] would deposit his salary, which was received via wire transfer or check from [Key's] bank account, into the Wells Fargo account. I had a checkbook for the Wells Fargo account and would write checks to pay child/spousal support. I would also write checks to pay the mortgage payment on [Denoyo]'s house, which was the same house we

Page 5 - ORDER AND OPINION

defendant asserts that, "[s]ince at least the time of their divorce, [she] has had absolutely nothing to do with [Denoyo's] business activities" and their "only interactions [have] been to deal with the care and custody of their two children." Id. at 2-3; see also Jordan Decl. ¶¶ 3-14. As a result, she "never met or communicated with [plaintiff] in any manner whatsoever" prior to this lawsuit. Jordan Decl. ¶ 5.

I.    Likelihood of Success on the Merits

Plaintiff first argues that "[i]t is not only probable that [he] will succeed on the merits, it is undisputed by the facts of [Key's] bank records that [defendant] was transferred those funds making it more than likely Plaintiff will succeed." Pl.'s Mem. in Supp. of Mot. Prelim. Inj. 15. Pursuant to Or. Rev. Stat. § 95.230 or Or. Rev. Stat. § 95.240, a person is liable if he or she effectuates a transfer of assets with the intent to defraud any creditor or without receiving a reasonably equivalent value in exchange. Or. Rev. Stat. § 95.230(1); Or. Rev. Stat. § 95.240. A person is liable under Or. Rev. Stat. § 59.115 as an aider and

---

had previously lived in during our marriage, and to [Denoyo]'s health insurance. I did so in part because it was habitual, as I had previously paid these expenses during the marriage, and also due to the fact that I wanted to ensure those payments were made so that our children would have some stability. [Denoyo] had a debit card for the account and used all remaining funds for his monthly living expenses. Other than what I removed from the account to pay child/spousal support, mortgage (on [Denoyo]'s house) and health insurance or other similar expenses for the children, [Denoyo] used and spent all funds in the Wells Fargo account for his own living expenses. Some months I would not receive any child/spousal support payments because there was not enough money in the Wells Fargo account. I stopped receiving any child/spousal support payments in approximately late 2009 or early 2010." Jordan Decl. ¶¶ 6-10.

abettor if he or she "participated or materially aided in the [unauthorized] sale" of a security. Mann v. St. Laurent, 229 F.Supp.2d 1133, 1138 (D.Or. 2002) (citations and internal quotations omitted). "The statute affords such persons an affirmative defense in the event that they can establish that they did not know, or could not reasonably have known of the facts on which liability is based." Id. (citations and internal quotations omitted).

Here, the Court finds that plaintiff cannot show he is likely to succeed on the merits of his claims. As defendant denotes, she never met plaintiff and "did not participate in any financial dealing regarding Plaintiff nor has she assisted [Denoyo] in hiding any assets." Def.'s Resp. to Mot. Prelim. Inj. 2-3; see also Jordan Decl. ¶¶ 13. Moreover, she "never received any funds or other benefits from [Denoyo], any of his companies, or any of his partners, except for his obligations under the Divorce Judgment and other minor expenses relating to our children," and "was not involved in any of his business dealings and had little knowledge of his business." Jordan Decl. ¶¶ 4, 13.

Accordingly, because defendant was not associated with Key or Centurian, possessed little information regarding Donoyo's business dealings, and never met plaintiff, there is no indication that she participated or materially aided in, or had any knowledge of, the underlying illegal sale of securities. Further, the fact that she continued to receive spousal support and alimony payments, pursuant to a preexisting arrangement that persisted since 2000, after

plaintiff was defrauded of $2,000,000 is insufficient to demonstrate the requisite elements of Or. Rev. Stat. § 95.230 or Or. Rev. Stat. § 95.240.[3] See Harris v. Crist, 96 Or.App. 263, 265-66, 772 P.2d 446 (1989) (transfer of property between former spouses did not violate Or. Rev. Stat. § 95.230(1) where there was no evidence "they were even thinking about [the plaintiffs] when that was done"). This is especially true given that plaintiff neglected to address or otherwise colorably establish that the allegedly fraudulently conveyed funds, in fact, belonged to him.

II. Possibility of Irreparable Injury

Plaintiff next contends that he "will suffer irreparable harm if Defendant is allowed to continue her fraudulent activity." Pl.'s Mem. in Supp. of Mot. Prelim. Inj. 15. As plaintiff recognizes, however, "traditionally courts do not look at monetary loss as irreparable harm." Id.; see also Sampson v. Murray, 415 U.S. 61, 90 (1974) ("[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm") (citation and internal quotations omitted).[4]

---

[3] Plaintiff's motion and complaint are unpersuasive to the extent they can be read as a collateral attack on defendant's entitlement to spousal support and alimony payments pursuant to the divorce decree. See Pl.'s Reply to Mot. Prelim. Inj. 2, 5. "[T]ransfers made under [a divorce] dissolution judgment are voidable as fraudulent" only if "allegations of extrinsic fraud" are involved, and no such allegations are present here. In re Bledsoe, 569 F.3d 1106, 1109-11 (9th Cir. 2009).

[4] Plaintiff asserts that Sampson is distinguishable because it "predates Grupo Mexicano as well as the relief considered in that case and the remedies allowed." Pl.'s Reply to Mot. Prelim. Inj. 4 (citing Grupo Mexicano de Desarrollo S.A. v. Alliance Bond

In addition, as discussed above, the evidence furnished by defendant flatly contravenes plaintiff's assertion that she "was instrumental as an aider and abettor to securities fraud, but also in perfecting multiple fraudulent transfers." Compare Pl.'s Mem. in Supp. of Mot. Prelim. Inj. 15, with Jordan Decl. ¶¶ 3-14. As such, this factor also weighs against plaintiff.

III. Balance of Equities

Plaintiff's brief is silent as to this factor. See generally Pl.'s Mem. in Supp. of Mot. Prelim. Inj. While not dispositive, the Court observes that plaintiff, "a former National Football League player and two-time Super Bowl champion," has been subsisting without the subject assets since 2006. Def.'s Mem. in Supp. of Mot. Prelim. Inj. 2. Conversely, defendant, who "lives a middle-class lifestyle . . . in Keizer, Oregon," may have difficultly providing for her family if the requested equitable relief is granted. Jordan Decl. ¶ 12.

---

Fund, Inc., 527 U.S. 308 (1999)). Yet Sampson remains good law, such that courts within the Ninth Circuit continue to find monetary loss inadequate to qualify as an irreparable injury. See, e.g., Jones v. Bank of Am., N.A., 2010 WL 2572997, *12 (D.Ariz. 2010) ("[e]conomic damages are not traditionally considered irreparable because the injury can later be remedied by a monetary award") (citing Cal. Pharmacists Ass'n v. Maxwell-Jolly, 568 F.3d 847, 852 (9th Cir. 2009)). Furthermore, Grupo held that, where an underlying court judgment exists, the court may issue a preliminary injunction freezing assets in which the plaintiff has a lien or other equitable interest. Grupo, 527 U.S. at 324-33. Here, however, defendant is neither a party to the underlying judgment nor does the evidence demonstrate that she participated in defrauding plaintiff. In any event, although Grupo authorized the remedy requested here, such relief is still not available unless the four factors governing preliminary injunctions weigh in favor of the moving party.

Page 9 - ORDER AND OPINION

IV.    <u>Public Interest</u>

Neither plaintiff nor defendant address the fourth factor. <u>See</u> <u>generally</u> Pl.'s Mem. in Supp. of Mot. Prelim. Inj.; Def.'s Resp. to Mot. Prelim. Inj. In sum, to the extent they are applicable, the factors outlined above weigh against the issuance of a preliminary injunction. As a result, the Court finds the relief requested by plaintiff to be inappropriate at this stage in the proceedings. Plaintiff's motion is therefore denied.

**CONCLUSION**

Plaintiff's motion for a preliminary injunction and other equitable belief (doc. 4) is DENIED.

IT IS SO ORDERED.
Dated this 31 st of August 2014.


_____
Ann Aiken
United States District Judge