IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JAMES BURT,

    Plaintiff,

v.

CHRISTINE DENOYO,

    Defendant

-and-

KEY TRADING LLC, RAFAEL DENOYO,
DAVID SULLIVAN, and PETER LARKIN

    Judgment Defendants.

Case No. 6:14-cv-01098-AA
OPINION AND ORDER

Aiken, Judge:

This lawsuit arises out of a previous case between plaintiff James Burt and judgment defendants Key Trading, LLC, Rafael deNoyo, David Sullivan, and Peter Larkin. Plaintiff entered

into an investment agreement with Key Trading and its various officers for two million dollars. When this scheme turned out to be fraudulent, plaintiff sued judgment defendants and won a settlement of nearly two million dollars. First Am. Compl. Ex. 2 at 26 (doc. 32-2). When judgment defendants defaulted on their payments under the settlement agreement, plaintiff filed this action against defendant Christine deNoyo (now Christine Jordan), Rafael deNoyo's ex-wife, alleging that she participated in the scheme to defraud plaintiff by laundering money that was owed to plaintiff. *Burt v. deNoyo*, 2014 WL 4384620, *1 (D. Or. Aug. 31, 2014). Following discovery, defendant moved for summary judgment. For the reasons set forth below, defendant's motion is granted and this case is dismissed.

## BACKGROUND

On June, 29, 2000, defendant divorced her then-husband Rafael deNoyo. According to the terms of the divorce, Rafael deNoyo was to pay defendant $2,012 per month in child support and $1,000 per month in spousal support. Bons Decl. Ex. 1 at 5-6, Oct. 3, 2016 (doc. 81-2). On June 1, 2003, defendant remarried. *Id.* Ex. 2.

Between September 2005 and January 2006, plaintiff invested two million dollars with judgment defendants. Judgment defendants told plaintiff that they had "developed a proprietary leveraged trading system," that would yield "monthly returns [on his] investment." *Burt*, 2014 WL 4384620 at *1. Plaintiff never received any profits from this scheme and "[in] essence [judgment defendants] stole $2,000,000 from [plaintiff] with no intent of returning it to him." *Id.*

After the divorce, defendant maintained a joint bank account with her ex-husband. Jordan Decl. ¶¶ 6-7, Jan. 5, 2016 (doc. 68). Defendant states she maintained the joint account in order to easily collect the child support and spousal support owed to her. *Id.* The arrangement was that Rafael

PAGE 2 - OPINION AND ORDER

deNoyo would deposit money into the joint account, and defendant would withdraw it for herself as dictated by the divorce agreement. *Id.* Plaintiff disputes that verison of events and alleges that defendant maintained the account for the benefit of her ex-husband in order to help him conceal money he stole from plaintiff and others. Pl.'s Resp. Mot. Summ. J. 3. Plaintiff alleges that between October 2007 and January 2012, Key Trading paid defendant $180,605 through a combination of wire transfers and checks sent through the United States mail. First Am. Compl. ¶¶ 40, 44. Some of the checks included the word "salary" on the memo line. *Id.* ¶ 44. Over this same period, Rafael deNoyo had an obligation to pay plaintiff $186,744 in child and spousal support.

Plaintiff and judgment defendants reached a settlement agreement in September 2010. After judgment defendants breached that agreement, plaintiff sued in the United States District Court for the District of New Jersey ("District of New Jersey"), alleging fraud and breach of contract. *Id.* In October 2013, plaintiff and judgment defendants reached a new settlement agreement. *Id.* Judgment defendants defaulted on their payments under the second settlement agreement in October 2013. *Id.* In June 2014, the District of New Jersey entered judgment in the amount of $1.8 million against judgment defendants. *Id.*

Plaintiff then sued defendant, claiming she aided and abetted judgment defendants' scheme and used money stolen from plaintiff to "live a lavish lifestyle." First Am. Compl. ¶ 70. Defendant argues that she is entitled to summary judgment because plaintiff has no evidence to support any of his claims beyond "conclusory statements and innuendo." Def.'s Mot. Summ. J. 2. Plaintiff responds that summary judgment is not appropriate here because plaintiff did not properly observe local rules regarding dispositive motions, supported her motion with declarations that do not meet the requirements of Federal Rule of Civil Procedure 56, relied on inadmissible hearsay to support her

PAGE 3 - OPINION AND ORDER

motion, and failed to show plaintiff cannot succeed on his claims for fraudulent conveyance, securities fraud, civil RICO violations, and conversion.[1] Having examined the pleadings, the evidence of record, and the parties' briefs, I find that the evidence is sufficient to indicate that defendant may be held liable for the claims alleged. I therefore enter summary judgment in defendant's favor.

## STANDARDS

Summary judgment is appropriate when the evidence shows "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment must first identify the parts of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927 (9th Cir. 2009) (quotation marks omitted). Should the moving party meet this initial burden, "the burden shifts to the non-moving party to set forth . . . specific facts showing that there is a genuine issue for trial." *Id.* at 929. On a motion for summary judgment, a court views "the evidence in a light most favorable to the nonmoving party." *Id.* at 927. Plaintiff's claim will survive summary judgment if there is "evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

---

[1] Plaintiff also brought a claim for "constructive trust." As defendant correctly points out, this is a form of relief and not a cause of action in itself.

## DISCUSSION

Plaintiff gives a number of substantive and procedural reasons to deny defendant's motion for summary judgment. With respect to plaintiff's procedural objections, I find plaintiff's argument that defendant's motion should be denied on the basis of her failure to comply with certain local court rules unconvincing. I also conclude that the declarations and exhibits defendant uses to support her motion are properly part of the summary judgment record. Regarding plaintiff's substantive claims for fraudulent conveyance, securities fraud, civil RICO violations, and conversion, I conclude the claims are supported at most by a mere scintilla of evidence and must therefore be dismissed. *See City of Vernon v. S. Cal. Edison Co.*, 955 F.2d 1361, 1369 (9th Cir. 1992) ("It is not enough for a party to content itself once it has produced a mere scintilla of evidence to support its case."); *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) ("A scintilla of evidence, or evidence that is merely colorable or not significantly probative, is not sufficient to present a genuine issue as to a material fact." (quotation marks omitted)).

I. *Defendant's failure to comply with the local rules does not justify denial of summary judgment*

Plaintiff argues that defendant's motion for summary judgment should be denied because she failed to comply with Local Rule 7-1. Specifically, plaintiff asserts defendant failed to confer before filing this motion as required by the rule and also failed to include certification that the parties had conferred in the motion. Pl.'s Resp. Mot. Summ. J. 2. I agree that plaintiff failed to comply with Local Rule 7-1.[2] The rule requires a party seeking to file a dispositive motion to "discuss each claim,

---

[2] Defendant is incorrect that the conferral requirements of Local Rule 7-1 do not apply to motions for summary judgment. Local Rule 7-1 applies to "every" motion except motions for temporary restraining orders. LR 7-1(a).

defense or issue that is the subject of" that motion, LR 7-1(a)(2), and to include in the first paragraph of the motion a certification that "the parties made a good faith effort through personal or telephone conferences to resolve the dispute and have been unable to do so," LR 7-1(a)(1). Defendant did not include a section at the beginning of her motion for summary judgment discussing LR 7-1 certification. Moreover, the record shows defendant failed to meet the rule's substantive conferral requirement as well; although the parties discussed their positions several times over the course of the litigation, there appears to have been no meaningful attempt to confer on the substance of the instant motion. Defendant also failed to begin her motion with a heading labeled "motion," in violation of LR 7-1(b), and failed to provide text-searchable PDFs with her motion, in violation of LR 5-2. Plaintiff argues that these failures to comply with local rules amount to a failure to actually move for summary judgment. Pl.'s Resp. Mot. Summ. J. 3.

Although it would be within my discretion to deny this motion based on these violations, I decline to do so. The public has a strong interest in this Court deciding cases on the merits. Plaintiff has not explained how he was prejudiced by the violations, most of which appear to have been more of an inconvenience for the Court than a problem for the opposing party. Here, the violations are not enough to dissuade this Court from considering the substance of defendant's motion. In the future, however, defendant's counsel would do well to familiarize himself with the local rules in order to avoid these kinds of controversies.

II. *Defendant's evidence is admissible*

Plaintiff argues that defendant has not cited any valid or admissible evidence to support her motion for summary judgment. Pl.'s Resp. Mot. Summ. J. 5. This, he argues, is because defendant fails to certify that declarants are competent to testify at trial, and that the exhibits are inadmissible

PAGE 6 - OPINION AND ORDER

hearsay besides. *Id.* I am not convinced by either of these arguments, and find no defect in the evidence provided by defendant to support her motion for summary judgment.

A. *Declarations need not explicitly address competence*

Plaintiff argues that declarants are not competent to testify because their declarations do not explicitly mention competency. Pl.'s Resp. Mot. Summ. J. 5. Under Rule 56 of the Federal Rules of Civil Procedure, "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, . . . [and] show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The declarations attached to defendant's motion do not explicitly say that the declarants are competent to testify. *See* Bons Decl. Ex. 3 & 4, Oct. 3, 2016. However, a declarant does not need to use specific language in order to demonstrate competency. Both declarations were signed under penalty of perjury and concern matters plainly within the declarants' personal knowledge, such as the date of their divorce and their child and spousal support agreement. *Id.* Plaintiff's objection regarding competence is without merit.

B. *Defendant's attached exhibits are appropriate subjects of judicial notice*

Plaintiff argues that defendant's motion for summary judgment is untenable because the judgment of dissolution showing that defendant had divorced her husband and was owed monthly child and spousal support and the marriage certificate showing she had married her new husband are inadmissible hearsay. Pl.'s Resp. Mot. Summ. J. 5. I need not address plaintiff's hearsay objections at this time because I find both documents to be appropriate subjects of judicial notice. Under Federal Rule of Evidence 201(b), a court may take judicial notice "of a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Defendant's exhibits are the copy

PAGE 7 - OPINION AND ORDER

of the Judgment of Dissolution from Marion County Circuit Court and an Oregon Department of Human Services marriage license for defendant and her current husband. Plaintiff has not questioned the accuracy of either document and offers only technical evidentiary objections to their admissibility. I take judicial notice of these documents because they are public records. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006). The exhibits attached to defendant's motion for summary judgment thus may be considered as part of the summary judgment record.

III. *Fraudulent conveyance*

Having dealt with the procedural concerns raised by plaintiff, I now turn to the substantive claims against defendant. First, plaintiff has brought a claim of fraudulent conveyance under Oregon law. First Am. Compl. ¶ 66. The statute in question states that a transfer is fraudulent if:

> (1) . . . the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent . . . [or]
>
> (2) . . . as to a creditor whose claim arose before the transfer was made, . . . the transfer was made to an insider for other than a present, reasonably equivalent value, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

Or. Rev. Stat. § 95.240.

Defendant argues she is entitled to summary judgment because she was not an "insider" at the time transfers were made from the Key Trading, LLC to defendant's joint account. Plaintiff's theory is that defendant actively participated in her ex-husband's scheme to defraud plaintiff by taking possession of plaintiff's money. First Am. Compl. ¶ 32. An insider, if the debtor is an individual, is defined to include a) a relative or general partner, b) a partnership in which the debtor

is a partner, c) a general partner in a partnership, or d) a corporation of which the debtor is a person in control. Or. Rev. Stat. § 95.200(7)(a). This list is not exhaustive, and the Oregon Court of Appeals has created a two part test to determine whether or not someone who does not fit these descriptions counts as an insider under this statute. A court must examine "the closeness of the relationship between the transferee and the debtor . . . and whether the transactions between the transferee and the debtor were conducted at arm's length." *Morris v. Nance*, 888 P.2d 571, 576 n.8 (Or. Ct. App. 1994). In *Morris*, the court expressly noted that an ex-spouse may be an "insider" under appropriate circumstances. *Id.*

Even though an ex-spouse may be an "insider," plaintiff has not brought forth evidence from which a jury could conclude defendant was an "insider" here. Defendant divorced her husband five years before plaintiff invested his money with judgment defendants and more than a decade before plaintiff and judgment defendants entered into the settlement agreement. Defendant's ex-husband had a pre-existing obligation to pay monthly child and spousal support. The evidence in the summary judgment record shows defendant collected *less* than she was owed in support payments.[3] Plaintiff has pointed to no evidence to show the support payments were made at anything other than arm's length. Defendant was not an "insider" under section 95.240. Additionally, even if defendant can be considered an insider under this statute, Rafael deNoyo received a present, reasonably equivalent

---

[3] Plaintiff alleges payments in excess of this amount, specifically payments of $22,800 to defendant from Quant Mountain, another enterprise allegedly controlled by Rafael deNoyo, over the course of 2012. First Am. Compl. ¶ 44. Plaintiff also broadly asserts that two 2007 transfers from Key Trading to "Centurian" were "later directly disbursed" to defendant, without explaining the connection between Centurian and defendant. *Id.* ¶ 21. In his response in opposition to the motion for summary judgment, plaintiff failed to cite any evidence supporting these allegations. That is insufficient at this stage. In the face of a "properly supported motion for summary judgment," a party must go beyond mere allegations in the complaint to produce "significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 249.

PAGE 9 - OPINION AND ORDER

value for his payments: the satisfaction of his support obligations to defendant. Accordingly, defendant is entitled to summary judgment on the claim of fraudulent conveyance.

IV. *Securities fraud*

Plaintiff also claims that defendant helped facilitate her ex-husband's securities fraud scheme and as such aided and abetted judgment defendants in defrauding plaintiff. First Am. Comp. ¶ 76. Oregon law states that:

> [E]very person who participates or materially aids in the sale [of securities] is also liable jointly and severally with and to the same extent as the seller, unless the nonseller sustains the burden of proof that the nonseller did not know, and, in the exercise of reasonable care, could not have known, of the existence of facts on which the liability is based.

Or. Rev. Stat. § 59.115(3). There is no evidence of record that shows defendant participated or materially aided in selling the investment opportunity to plaintiff. Indeed, there is no evidence to show that defendant knew anything about her ex-husband's fraudulent schemes beyond her own assertion that she "was aware that [Mr.] deNoyo was financially irresponsible." Jordan Decl. ¶ 5, Jan. 5. 2016. Plaintiff's argument that defendant provided Mr. deNoyo with a bank account in order to complete the securities fraud scheme is conclusory. Plaintiff has brought forth evidence that could convince a reasonable juror that defendant should have been aware her ex-husband was up to something fishy. For example, there are several sporadic and irregular transactions made from Key Trading's account to defendant's joint account made out in her name marked as "salary." First Am. Compl. ¶ 44. In addition, it appears Rafael deNoyo not only deposited money into the joint account but also withdrew cash from the account at ATMs and used the account to make purchases. Jordan Dep. 46:5-47:2. A reasonable juror could conclude from this evidence that defendant knew (or should have known) her ex-husband was using the joint account to conceal his assets from someone.

But there is no evidence sufficient to support the conclusion plaintiff was aware of the scheme to defraud plaintiff. There is no evidence that she participated, materially aided, or was even aware that any sale of securities had taken place. As such, summary judgment on this claim is also granted.

V.   *Civil RICO claims*

Plaintiff has also brought a claim under the Racketeering Influenced and Corrupt Organization act. First Am. Compl. ¶¶ 78, 113. Plaintiff only offers the conclusory statement that "Defendant maintained a bank account to facilitate, at a minimum: money laundering, wire fraud, tax fraud, and securities fraud." Pl.'s Resp. Mot. Summ. J. 13. "Civil RICO is directed at 'racketeering activity,' which it defines as any act "chargeable" under several generically described state criminal laws." *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1080 (9th Cir. 1986). While her ex-husband may have engaged in money laundering and fraud, and may have used their joint account in the process, nothing in the record suggests that defendant is liable for those activities. Plaintiff points to the numerous checks made out to defendant marked "salary." As noted, a reasonable juror could conclude on the basis of this evidence that defendant was aware her ex-husband was trying to hide his assets from someone. However this does not show that defendant was a participant in any of her ex-husband's racketeering activities. Because there is no aiding and abetting liability in civil RICO cases, defendant would only be liable if she had participated as a principal in her ex-husband's securities fraud scheme. *See Salas v. Int'l Union of Operating Eng'rs*, 2015 WL 728365, *7-8 (C.D. Cal. Feb. 18, 2015) (discussing *Centr. Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 182 (1994)). The evidence in the summary judgment record is insufficient to support a conclusion that defendant participated in the underlying securities fraud

scheme (or any other RICO predicate) at that level. Accordingly, summary judgment on the RICO claim is granted.

VI. *Conversion*

Finally, plaintiff asserts a common-law conversion claim against defendant. First Am. Comp. ¶ 120. Oregon law defines conversion as "an *intentional* exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy*, 456 P.2d 1004, 1007 (Or. 1969) (emphasis added). Nothing in the record shows that defendant intended to interfere with any of plaintiff's property. As explained above, the record does not contain sufficient evidence to support a conclusion that defendant knew of her ex-husband's fraudulent scheme or of plaintiff's involvement in it. The numerous "salary" checks made out to defendant and Rafael deNoyo's use of the joint account may demonstrate that defendant should have been aware her husband was concealing his assets from someone, but they do not show that defendant had any intentions regarding plaintiff or his money. It bears repeating that on the evidence in the summary judgment record, Rafael deNoyo paid plaintiff *less* than the total amount she was owed in child and spousal support. That evidence is simply insufficient to create a genuine issue of material fact regarding liability for conversion. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) ("A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact.") Without a showing of intent, plaintiff's claim for conversion fails. As such, summary judgment on this claim is granted.

While this Court sympathizes with plaintiff's experience as the victim of a large-scale fraud, the evidence in the record is insufficient to show defendant is liable for his injuries. Summary judgment on all claims in this motion is hereby granted in defendant's favor.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (doc. 81) is GRANTED. Requests for oral argument are DENIED as unnecessary. This case is DISMISSED.

IT IS SO ORDERED

Dated this 5th day of December 2016.

Ann Aiken
United States District Judge