IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JAMES BURT,                                          Case No. 6:14-cv-01098-AA
                                                           OPINION AND ORDER

        Plaintiff,

        v.

CHRISTINE DENOYO,

        Defendant

-and-

KEY TRADING LLC, RAFAEL DENOYO,
DAVID SULLIVAN, and PETER LARKIN,

        Judgment Defendants.

AIKEN, Judge:

        This dispute over attorney fees arises out of a factually and procedurally complicated case involving plaintiff James Burt's ("plaintiff") claims against judgment defendants Key Trading LLC, Rafael deNoyo, David Sullivan, and Peter Larkin ("judgment defendants").

PAGE 1 - OPINION AND ORDER

## BACKGROUND

In 2005-2006, plaintiff entered into an investment agreement with judgment defendants for two million dollars. Pl.'s Compl. ¶¶ 13-15 (doc. 1); *Burt v. Key Trading LLC*, 2014 WL 5437070, *1 (D.N.J. 2014). After plaintiff learned the investment scheme was fraudulent, he sought counsel and demanded restitution. Pl.'s Compl. ¶ 19; *Burt*, 2014 WL 5437070, at *1. In 2010, the parties entered into a settlement agreement in which judgment defendants agreed to repay plaintiff most of his two million dollars. First Am. Compl., Ex. 2 at 26 (doc. 32-2). In 2012, plaintiff filed suit against judgment defendants in the United States District Court for the District of New Jersey for breach of contract, alleging that judgment defendants had failed to make the agreed-to payments. Pl.'s Compl. ¶ 44; *Burt*, 2014 WL 5437070, at *1. In October 2013, the parties again entered into a settlement agreement. Pl.'s Compl. ¶ 45, Ex. 3; *Burt*, 2014 WL 5437070, at *1. Judgment defendants again defaulted. Pl.'s Compl. ¶ 46; *Burt*, 2014 WL 5437070, at *2. In June 2014, the New Jersey District Court entered judgment against judgment defendants for $1,800,000. Pl.'s Compl. ¶ 47; *Burt*, 2014 WL 5437070, at *2.

In July 2014, plaintiff filed this action against defendant Christine deNoyo ("Mrs. Jordan"), the ex-wife of judgment defendant Rafael deNoyo ("Mr. deNoyo"); plaintiff generally accused Mrs. Jordan of aiding and abetting Mr. deNoyo in both the initial fraud and in his attempts to evade his responsibilities under the settlement agreements. Pl.'s Compl. 1. Mrs. Jordan and Mr. deNoyo divorced in 2000, and Mrs. Jordan remarried in 2003. Jordan Decl. ¶¶ 3, 4 Jul. 31 2014 (doc. 19). Mrs. Jordan had, however, maintained a joint Wells Fargo bank account with Mr. deNoyo during the time period relevant to judgment defendants' fraudulent activities and their breach of multiple settlement agreements with plaintiff. Pl.'s Compl. ¶ 36, Ex. 5; Def.'s Mem. Opp'n Emergency

Order Show Cause 1 (doc. 18); Jordan Decl. ¶¶ 3, 4 Jul. 31, 2014. Mr. deNoyo regularly deposited money from his Key Trading account into Mrs. Jordan's account, and many of the deposits were contemporaneous with the 2005-2006 investment fraud and obligations under the 2010 and 2013 settlement agreements. Pl.'s Compl. ¶ 36, Ex. 5. Based on these undisputed facts, plaintiff accused Mrs. Jordan of engaging in fraudulent conveyance, securities fraud, civil RICO, and conversion. First. Am. Compl. ¶¶ 66, 76, 78, 113, 120 (doc. 32). Mrs. Jordan responded to plaintiff's claims by asserting that the purpose of the Wells Fargo account she shared with Mr. deNoyo was to make it easier for him to pay his court-ordered child and spousal support payments, and to pay those of Mr. deNoyo's bills that directly impacted their two children, such as the mortgage. Jordan Decl. ¶¶ 7, 8, 9 Jul. 31, 2014.

After a multi-year discovery battle, I entered summary judgment on December 5, 2016, in Mrs. Jordan's favor. Order Grant. Pl.'s Mot. Summ. J. (doc. 88). While I certainly sympathized with plaintiff's plight as a fraud victim, did not approve of judgment defendants' repeated breach of their contractual agreements, and wanted to honor the New Jersey District Court's 2014 judgment for plaintiff, there was insufficient evidence against Mrs. Jordan regarding her knowledge of her ex-husband's activities to survive summary judgment. *Id.* Mrs. Jordan now moves for attorney fees. For the reasons set forth below, Mrs. Jordan's motion is denied.

## STANDARDS

In a diversity action in federal court, state law governs the availability and amount of attorney fees. *In re Larry's Apartment, LLC*, 249 F.3d 832, 838 (9th Cir. 2001); *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1388-89 (9th Cir. 1986).

PAGE 3 - OPINION AND ORDER

Or. Rev. Stat. § 59.115(10) ("59.115") provides that Oregon courts "may award reasonable attorney fees to the prevailing party in a [securities fraud] action under this section."

In determining whether to award fees under a discretionary statute like 59.115, Oregon courts must first consider the eight non-exclusive factors listed in Or. Rev. Stat. § 20.075(1) ("20.075(1)"). *McCarthy v. Or. Freeze Dry, Inc.*, 957 P.2d 1200, 1204-05 (Or. 1998). 20.075(1) provides:

> A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:
>
> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
>
> (b) The objective reasonableness of the claims and defenses asserted by the parties.
>
> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
>
> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.
>
> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.
>
> (f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.
>
> (g) The amount that the court has awarded as a prevailing party fee under [Or. Rev. Stat. §] 20.190.
>
> (h) Such other factors as the court may consider appropriate under the circumstances of the case.

Or. Rev. Stat. § 20.075(1).

"The opposing party's objections to the attorney fee award 'play an important role' in framing the issues relevant to the court[']s decision." *Alexander Mfg. Inc. Emp. Stock Ownership Plan & Trust v. Ill. Union Ins. Co.*, 688 F. Supp. 2d 1170, 1181 (D. Or. 2010) (citing *McCarthy*, 957 P.2d at 1208).

### DISCUSSION

PAGE 4 - OPINION AND ORDER

Plaintiff has three objections to Mrs. Jordan's motion for attorney fees. First, plaintiff argues that Mrs. Jordan's motion fails to provide a valid legal basis upon which attorney fees should be awarded for the "vast majority" of her fee claim. Pl.'s Mem. Opp'n Def.'s Mot. Att'y Fees 5 (doc. 97). Plaintiff argues Mrs. Jordan's analysis of 20.075(1) and (2) is insufficient, and contends that most of the hours billed should be excluded because she is only allowed to collect fees related to plaintiff's 59.115 securities fraud claim. *Id.* Second, plaintiff contends that attorney fees and costs should not be awarded to Mrs. Jordan because she had to be compelled to provide discovery, and that the time she spent not complying with discovery requests and orders was unreasonable. *Id.* at 8. Finally, plaintiff avers that attorney fees and costs should not be awarded to Mrs. Jordan because her motion is not supported by sufficient evidence, specifically that Mrs. Jordan's lawyers' billing entries are vague and inaccurate. *Id.* at 10.

Here, it is unnecessary to address plaintiff's second or third objections. After reviewing the 20.075(1) factors, I decline to award Mrs. Jordan attorney fees.

I.      *20.075(1) Factors*

Plaintiff argues that Mrs. Jordan not only failed to analyze the 20.075(1) factors, but that even if she did analyze them, her argument does not support awarding fees. Pl.'s Mem. Opp'n Def.'s Mot. Att'y Fees 5. Plaintiff's characterization of Mrs. Jordan's argument and his understanding of Oregon law are not entirely accurate.

Attorney Kevin Bons's declaration accompanying Mrs. Jordan's motion for attorney fees asserts that "the following factors favor Defendant's request for Attorney Fees: (a) Conduct of the Parties . . . (b) Reasonableness of Claims and Defenses . . . (c) Deterrence Effect on Good Faith Claims . . . (d) Deterrence Effect on Unmeritorious Claims . . . (e) Objective Reasonableness of

PAGE 5 - OPINION AND ORDER

Parties . . . (f) Settlement," and contains facts to support each category. Bons Decl. ¶ 6 Dec. 27, 2016 (doc. 93). The language in Mr. Bons's declaration tracks the language of 20.075(1). Accordingly, contrary to plaintiff's assertion that Mrs. Jordan "provided inadequate, if any, analysis required under ORS 20.075 (1)," Mrs. Jordan does indeed provide analysis of 20.075(1). Pl.'s Mem. Opp'n Def.'s Mot. Att'y Fees 6. Moreover, it is the court that must analyze the eight factors listed in 20.075(1), not the parties. *McCarthy*, 957 P.2d at 1204-05.

Factor 20.075(1)(a) looks at the conduct of the parties in the transactions or occurrences that gave rise to the litigation, to see if any conduct of a party was reckless, willful, malicious, in bad faith or illegal. Nothing in the record suggests that plaintiff's conduct prior to the litigation was reckless, willful, malicious, in bad faith or illegal. Likewise, nothing in the record suggests that Mrs. Jordan's conduct prior to the litigation was reckless, willful, malicious, in bad faith or illegal. This factor, therefore, is neutral.

Factor 20.075(1)(b) looks at the objective reasonableness of the claims and defenses asserted by the parties. A weak claim is not necessarily unreasonable. *Axis Surplus Ins. Co. v. Lebanon Hardboard, LLC*, 2009 WL 490008, *4-5 (D. Or. 2009), *aff'd*, 366 Fed. Appx. 727 (9th Cir. 2010). In *Axis Surplus Ins. Co.*, the court analyzed 20.075(1)(b) and found that while a claim was "weak," and the party's conduct "left room for improvement," the claim was nonetheless reasonable. *Id.* at 5. In this case, plaintiff's initial claims of securities fraud and fraudulent conveyance may have been weak. However, plaintiff was objectively reasonable in initially pursuing these claims against Mrs. Jordan. As a result of plaintiff's earlier litigation with judgment defendants, he had access to Mr. deNoyo's Key Trading banking records, which showed that Mr. deNoyo regularly transferred large sums of money from his Key Trading account into a Wells Fargo account held by Mrs. Jordan in her

PAGE 6 - OPINION AND ORDER

former married name, Christine deNoyo; this activity took place during relevant time periods, and the total amount transferred from Mr. deNoyo into Mrs. Jordan's account, while debated, was substantial. Pl.'s Compl. ¶ 36, Ex. 5; First Am. Compl. ¶¶ 40-53. Further, there was no dispute that Mr. deNoyo stole money from plaintiff around the same time. First Am. Compl. ¶¶ 21-29, Ex. 2 at 4, 22, 30. The only disputed facts were how much, if anything, Mrs. Jordan knew about Mr. deNoyo's fraudulent activities, and whether she was actively helping Mr. deNoyo conceal plaintiff's money or merely collecting the child and spousal support Mr. deNoyo owed Mrs. Jordan under the terms of their divorce. Accordingly, plaintiff's claims were objectively reasonable.

Likewise, Mrs. Jordan's defenses were also objectively reasonable because she had divorced Mr. deNoyo in 2000 and Mr. deNoyo was obligated to pay Mrs. Jordan at least $3,000 per month in child and spousal support during the relevant time periods. Jordan Decl. ¶¶ 3, 7, Ex. A Jul. 31, 2014. This second factor, too, is neutral.

Factors 20.075(1)(c) and (d) look at the extent to which an attorney fee award would deter others from asserting good faith or meritless claims in similar cases. I believe that awarding attorney fees to Mrs. Jordan would deter the assertion of future good faith claims in similar cases. While plaintiff's securities fraud claim is not itself necessarily typical, securities fraud cases are often complicated and expensive for victims, both because of the initial losses and because of litigation costs. The same is true for plaintiff's fraudulent conveyance and conversion claims. If future fraud victims have objective reason to believe that their fraud's perpetrators used their spouses or ex-spouses to conceal fraudulently acquired funds, then the victims should be free to proceed in good faith to file claims against those spouses or ex-spouses. Here, plaintiff had bank records that showed that Mr. deNoyo was depositing money into Mrs. Jordan's account. Pl.'s Compl. ¶ 36, Ex. 5. Once

PAGE 7 - OPINION AND ORDER

plaintiff was informed of the history of Mrs. Jordan's relationship with her ex-husband and the purported purpose of their shared account, plaintiff still had a good faith reason to use discovery to follow the money to determine whether Mrs. Jordan was telling the truth about her lack of knowledge. Mrs. Jordan resisted providing discovery that, had it been provided, and had it supported Mrs. Jordan's claims about the nature of her financial relationship with her ex-husband, might have ended plaintiff's continued pursuit of his claims. Order Mot. Compel (doc. 35). Eventually, Mrs. Jordan had to be compelled to provide discovery. *Id.* Additionally, Mrs. Jordan deleted emails that, had they not been deleted, may have ended plaintiff's continued pursuit. Order Den. Mot. Sanctions (doc. 77). While Mrs. Jordan's discovery production issues did not demonstrate the kind of bad faith necessary to satisfy plaintiff's claim of spoliation, Judge Coffin noted that the deletion could support an adverse inference instruction at trial. Order Den. Mot. Sanctions 6.

Because plaintiff brought objectively reasonable claims in a complicated case, pursued them in good faith, and did not receive defendant's timely or full cooperation, I am concerned that awarding fees in this case would deter similar claims in future cases. These factors do not favor awarding attorney fees to Mrs. Jordan.

Factor 20.075(1)(e) looks at the objective reasonableness and diligence of the parties during the proceedings. During this litigation, both parties' objective reasonableness and diligence left room for improvement. First, there were plaintiff's initial and amended complaints to this Court. Second, there was Mrs. Jordan's recalcitrance in providing relevant discovery, and deletion of potentially relevant discovery. I addressed Mrs. Jordan's behavior above: not only did she have to be compelled to provide relevant discovery, but she deleted potentially relevant discovery. Her

behavior showed a lack of objective reasonableness and diligence, at best, and does not favor awarding her attorney fees.

Plaintiff's initial and amended complaints against Mrs. Jordan also showed a lack of objective reasonableness and diligence because they were mistaken and because plaintiff made seemingly little effort to correct his mistake. Plaintiff's initial complaint began, "This litigation arises from a multi-layered scheme to defraud that saw the Judgment Defendants pilfer millions of dollars . . . [and] transfer their ill-gotten gains to their wives, one of whom resides in Oregon – Defendant Christine deNoyo[.]" Pl.'s Compl. 2. Plaintiff's characterization of Mrs. Jordan as one of judgment defendants' wives was mistaken. Mrs. Jordan and Mr. deNoyo divorced back in 2000. Jordan Decl. ¶¶ 1, 3, Ex. A Jul. 31, 2014. Mrs. Jordan notified plaintiff of his mistake. Def.'s Mem. Opp'n Pl.'s Emergency Mot. Order Show Cause 2. Plaintiff's amended complaint read as follows: "This litigation arises from a multi-layered scheme to defraud that saw the Judgment Defendants pilfer millions of dollars . . . [and] transfer their ill-gotten gains to their [ex-]wives, one of whom resides in Oregon – Defendant Christine deNoyo[.]" First Am. Compl. 1. Plaintiff's initial complaint showed a lack of objective reasonableness and diligence because it was mistaken. His amended complaint made little effort to correct this mistake, which shows a lack of diligence. This cuts in favor of awarding fees.

Because both parties' objective reasonableness and diligence left room for improvement under 20.075(1)(e), I find that this factor is neutral.

Factor 20.075(1)(f) looks at the objective reasonableness and diligence of the parties in pursuing settlement. Looking at the record, the parties attempted ADR, but were unable to reach a mutual agreement. Joint ADR Rep. (doc. 24). Mrs. Jordan alleges that she offered plaintiff $10,000

PAGE 9 - OPINION AND ORDER

to settle the case in June 2016, but that plaintiff countered with an offer of $300,000. Bons Decl. ¶ 6 Dec. 27, 2016. This disparity seems objectivelyMarch 15, 2017 reasonable in light of both parties' claims and defenses. This factor is neutral.

Factor 20.075(1)(g) looks at amount that the court has awarded as a prevailing party fee under Or. Rev. Stat. § 20.190. Here, I awarded no such fee. This factor is neutral.

Factor 20.075(1)(h) looks at other factors the court may consider appropriate under the circumstances of the case. I discussed any such factors under 20.075(1)(e). This factor is neutral.

Because all of the 20.075(1) factors are either neutral or weigh against awarding Mrs. Jordan attorney fees, I find that it is not appropriate to award her attorney fees. Accordingly, it is not necessary to address plaintiff's other objections regarding Mrs. Jordan's analysis of 20.075(2), or whether Mrs. Jordan is only entitled to those fees related to plaintiff's 59.115 securities fraud claim.

## CONCLUSION

Defendant Christine Jordan's (formerly Christine deNoyo) Motion for Attorney Fees (doc. 91) is DENIED. Defendant's motion for costs (doc. 96) is also DENIED. The parties' request for oral argument is denied as unnecessary.

IT IS SO ORDERED.

Dated this 16th day of March 2017.

_____
Ann Aiken
United States District Judge